UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SIMON KWOK,

        Plaintiff,       **MEMORANDUM**
                  **AND ORDER**
    -against-        CV 22-4290 (ARL)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

    The plaintiff, Simon Kwok ("Kwok"), brought this appeal pursuant to the Social Security

Act, 42 U.S.C. § 405 *et seq*. (the "Act"), challenging a final determination by the Commissioner

of the Social Security Administration that he was ineligible to receive Social Security disability

insurance benefits.  Before the Court is Kwok's motion for judgment on the pleadings pursuant

to Fed. R. Civ. P. 12(c).  For the reasons set forth below, the plaintiff's motion is granted and the

matter is remanded for further administrative proceedings, including a de novo hearing and new

decision.

## BACKGROUND

    The following facts are drawn from the parties' Joint Stipulation of Facts.

**1.**    **Factual Background**

    Kwok is a 47 year old person who previously worked as a sergeant in the New York City

Police Department.  Tr. 422, 426. [1]  He has a GED and has not worked since February 28, 2015.

Tr. 425.  Kwok was hospitalized from October 24, 2013 through November 12, 2013 for an L4-5

to L5-S1 posterior lumbar interbody fusion surgery.  Tr. 280.  Post-operatively, Kwok developed

a left lower lobe infiltrate.  Tr. 289.  Three months after that surgery, in March 2014, Kwok

---

[1] Tr. are citations to the Administration Transcript found at ECF No. 13.

developed left side radiculopathy.  Tr. 296.  An X-ray and CAT scan revealed extrusion of both L4-5 and L5-S1 cages on the left side in the spinal canal for about 3 to 4 mm.  Tr. 296, 356.

On March 11, 2014, Kwok was admitted for a revision surgery with removal and advancement of the extruded cages.  Tr. 296.  At his follow-up appointment, in April 2014, Kwok reported improvement, but indicated that he was still having numbness of his left foot and vesiculations of the right thigh.  Tr. 361.  At his next follow-up appointment in November 2014, Kwok showed slow, steady improvement, was ambulating without a cane, and had 5/5 strength in his legs.  Tr. 365.  Indeed, a CT-scan of the lumbar spine showed solidification of the posterolateral fusion and intact hardware.  Tr. 365.

Almost two and a half years later, but eight months before he first filed for disability benefits, Kwok presented to Dr. Mitchell Goldstein with complaints of radicular pain down his legs with some numbness in his feet.  Tr. 368-69.  He also reported decreased overall mobility due to bilateral leg weakness and pain.  *Id*.  To this end, he stated that he was having difficulty with activities of daily living including walking and standing.  *Id.*  Kwok was diagnosed with lumbosacral herniation of the nucleus pulposus, radiculopathy, pelvic and sacroiliac joint sprain, right and left knee pain, and left shoulder tendinitis with internal derangement.  Tr. 370.  Dr. Goldstein recommended caution with activities, ice, heat, a home exercise program, and further radiographic imaging.  Tr. 370.

Kwok then presented for a consultative examination, on May 29, 2018, with Dr. Evelyn Wolf, an internal medicine physician. Tr. 381.  Kwok reported that he had low back pain that radiated down both legs, numbness in his feet, and muscles in his legs that twitched intermittently.  Tr. 381.  A physical examination revealed a normal gait with no assistive device, difficulty walking on his toes and heels, limited squat, psoriatic lesions on the feet, and a

decreased lumbosacral range of motion.  Tr. 382-83.  Kwok had full (5/5) strength in all extremities, equal reflexes, and no sensory deficit.  Tr. 383.  Dr. Wolf noted that he did not need help getting on or off the exam table and was able to rise from a chair without difficulty.  Tr. 382.  His lumbosacral x-rays showed a history of fusion surgery with some degenerative changes.  Tr. 385.  Dr. Wolf diagnosed a history of lumbar spinal fusion, non-insulin dependent diabetes, asthma, hypertension, and psoriatic lesions.  Tr. 383-84.  She opined that Kwok was moderate to markedly limited in walking, standing, and climbing, not limited in sitting provided he could stretch from time to time, and moderately limited for any lifting.  Tr. 384.

On February 3, 2020, Kwok returned to Dr. Goldstein for treatment of lower back pain that radiated to his legs. Tr. 825.  It had been almost three years since his prior visit.  A physical examination revealed lumbar tenderness and spasms, decreased sensation in the feet, limited lumbar range of motion, positive straight leg raise testing bilaterally, and tenderness in the left knee and left shoulder. Tr. 825-26.  Dr. Goldstein diagnosed fusion of the spine in the lumbar region, lumbar radiculopathy with low back pain and pain in the left shoulder and left knee.  Tr. 827.  According to Dr. Goldstein, Kwok "remain[ed] permanently and totally disabled with very significant limitations and difficulties with [activities of daily living]."  *Id*.  Specifically, Dr. Goldstein reported that Kwok was having difficulty with standing, sitting, walking, squatting, driving and activities of daily living.  *Id*.

Then, in June, Dr. Goldstein prepared a letter, in which he stated:

> [Kwok] is a 43-year-old retired NYPD officer who is been [under] my orthopedic surgical care since 2017.  [Kwok] [i]nitially had a back injury in September 2009.  And MRI [at] that time revealed an L5/S one left paracentral disc herniation deforming the lateral recess end it L4/L5 broad base paracentral herniation associated with thecal sac and bilateral impingement.  He had a work related injury on February 4, 2012.  There was [a] domestic dispute with a mentally ill person. There [was] a physical restraint and use of force.  He fell straight down and injured his lower back again.  He [had] progressive pain

3

going down both legs.  He underwent conservative therapy with rest, physical therapy, pain management [and] epidural steroid injections.  A[n] MRI revealed an L4/L5 and L5/S 1herniated disc associated with thecal sac and lateral recess impingement.  [A] [r]epeat MRI revealed similar findings of the lumbar spine.  He had surgery in October 2013 with a posterior lumbar decompressive laminectomy and fusion from L4 to S1.  He continued to have difficulty and instability and had revision lumbar spine surgery in March 2014.  [Following] that surgery [Kwok] continue[d] to have chronic low back pain and ridiculous findings.  He continued to have numbness into his legs and weakness in both legs with atrophy. He continues to have difficulties walking, standing driving and all activities of daily living.  He [has had] progressive weakness and atrophy.  He[ has had] difficulty even walking 150 feet [or] sitting [and] standing for more than 10 to 15 minutes [and needed] to rest or change position.  He feels best being supine and with inactivity.  He tries to avoid taking pain medication.  He does [take] indomethacin for inflammation.  In addition, [Kwok] had left shoulder pain since [the] original surgery and [when he is in] the left lateral decubitus position.  He gets pain with sleep and lying on the left side.  He has difficulty with ADLs.  He also had continual bilateral knee pain in the parapatellar region and difficulty with squatting, steps, running and ADLs.

Physical examination:
5'6", 160 pounds, right hand dominant
Lumbar spine: well healed midline surgical incision from lumbar fusion x 2
Tenderness of the paraspinal lumbar region, SI joints, right and left gluteal region,
Range of motion: flexion 45° with pain, extension 5°, lateral flexion 10°, fair rotation, pain at the limits of range of motion in all planes.
Positive straight leg raising bilaterally.
Quadriceps and left leg atrophy greater than right[.]
Weakness in both legs.
EHL LEFT 4/5, RT 4+/5
Left shoulder: tender and two and post to rotator cuff, painful restricted range of motion in all planes. Flexion 140°, abduction 140°, extension 35°, external rotation 35° with almond side.
Internal rotation 35°. Weakness[.]
Right [and] left knee: retropatellar tenderness.  Range of motion restricted.
Pain with quad setting and retropatellar tenderness.  Pain with squatting.

Impression:
Lumbar fusion X 2
Lumbago
Failed back syndrome
Lumbar radiculopathy/neuropathy
Left shoulder pain
Right and left knee pain

4

> Conclusion:
> 43-year-old retired NYPD officer with very significant orthopedic pathology.
> His history of traumas, his subjective complaints, his physical examinations,
> diagnostic testing and surgical interventions/reports [have] been persistent and
> consistent.  He continues to have difficulty with all activities of daily living
> including sitting, standing, lifting, carrying, pushing, pulling, reaching,
> [c]omputer work, driving, and sleeping.  He needs to [a]void any repetitive
> lifting 5 pound or more.  His situation will also be progressive and require
> continue[d] orthopedic care and management. He is and will remain
> permanently and totally disabled.

Tr. 1626-27.

At an appointment on December 9, 2020, with Marisa Ip, M.D., an internist, Kwok also

complained of bilateral leg pain, and specifically, a worsening of the left side and when he

changed positions.  Tr. 1580, 1582.  Dr. Ip's examination findings included left leg atrophy and

left hip range of motion limited by pain.  Tr. 1581.  She noted that Kwok had no spinal

tenderness.  *Id*.  His sensory examination was also normal.  *Id*.  Kwok was diagnosed with

benign hypertension, type 2 diabetes mellitus, chronic back pain, and mild intermittent asthma.

Tr. 1582.

On December 28, 2020, Kwok had a lumbosacral computed topography (CT) scan that

revealed L3-4 herniated disc with mild central canal stenosis with moderate bilateral neural

foraminal narrowing, small L2/L3 disc bulge, and arthritis of L4/L5 and L5/S1.  Tr. 1563, 1574.

A lumbar x-ray performed the same day showed: intact and uncomplicated spinal fusion

hardware consisting of pedicle screws with interconnecting rods and interbody disc spacer

implants at respective disc levels at the L4-S1 level; multilevel anterior disc margin osteophytes

with variably narrowed predominantly posterior disc spaces; L3 on L4 retrolisthesis without

associated spondylosis defects; and remaining vertebral body alignment maintained with

unremarkable SI joints.  Tr. 812.

2.      **Procedural History and Relevant Non-medical Evidence**

On December 4, 2017, more than three years after his spinal surgeries, Kwok filed a

Title II application for a period of disability and disability insurance benefits due to a back

disorder, radiculopathy and diabetes with a disability onset date of March 1, 2015.  Tr. 19, 21,

70, 150-51, 166.  Kwok's application was initially denied on June 22, 2018.  Tr. 19, 70.  Kwok

then requested a hearing, which was held before the ALJ on October 25, 2019.  Tr. 19, 33-59.

Kwok testified at the hearing that he had pain in his lower back and hamstrings, and numbness

below the knees in both legs.  Tr. 41.  He stated that he used a cane for ambulation if he was

going somewhere unfamiliar.  Tr. 44-5.  He indicated that he lived alone in a two-story home and

on days when he was in a lot of pain, he stayed on the first floor. Tr. 38, 48.

Kwok further stated that his medical providers had told him that his treatment options

were limited to taking opioids for pain, which he declined.  Tr. 42.  He reported that he could

only stand for 10 to 15 minutes before having pain and could walk approximately a block to a

block and a half.  Tr. 45.  He indicated that he could carry around five pounds but did not carry

anything heavy.  Tr. 46.  He stated that he used a sock assist to help him with dressing, and he

wore shirts with buttons so he did not have to raise his arms overhead.  Tr. 47.  He averred that

he did laundry monthly but rarely cleaned.  Tr. 47-8.  He did state that he was able to shop for

himself for a handful of simple items but received assistance from others when he had more

items or heavy items.  Tr. 49.  He finally noted that he could not do yard work and had friends

stop by to keep him company.  Tr. 49-51.

In a decision dated November 19, 2019, the ALJ found that Kwok was not disabled.  Tr.

16-31.  Kwok filed a request for review with the Appeals Council and his request was denied on

October 13, 2020.  Tr. 1-5.  As such, the decision of the ALJ became the final decision of the Commissioner from which Kwok filed his first appeal.  Tr. 1.

On December 4, 2020, Kwok commenced an action in this Court pursuant to 42 U.S.C. §405(g) of the Social Security Act for review of the Commissioner's November 19, 2019 decision.  He also filed a second claim for benefits on December 31, 2020.  Tr. 492-494. However, the parties subsequently entered into a stipulation for remand and, on July 15, 2021, District Judge Brown issued an electronic Order granting the parties' joint motion to remand.  Tr. 484.  The Judgment closing the case was entered on July 16, 2021.  Tr. 485-89.  Upon remand, the Appeals Council directed the ALJ, in relevant part, to:

> • Update the evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and medical evidence (20 CFR 404.1512-1513).
>
> • Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p).
>
> • Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-14 and 96-9p)
>
> • Consolidate [] Kwok's Title II claim filed on December 4, 2017 with his Title II claim filed on December 31, 2020 and issue a new decision on the consolidated claims.

Tr. 492-494.

In response, on April 26, 2022, an administrative hearing was held before Administrative Law Judge Andrew S. Weiss (the "ALJ").  Tr. 402, 422-44.  Kwok testified at the second hearing that he was injured during an altercation while trying to restrain an emotionally disturbed person.  Tr. 428-29.  He stated that he dropped to the ground, injured his back, and was never

able to return to full duty work.  Tr. 429.  He noted that he underwent a laminectomy, had two

bilateral rods implanted in his lower back, and subsequently underwent a revision surgery

because the cage that holds the rods slipped and was touching a nerve.  *Id.*

Kwok further testified that he can stand or sit for no more than 15 minutes without pain.

Tr. 426.  He indicated that he requires frequent rest breaks and some of those breaks require him

to lay down.  Tr. 427.  He stated that he has chronic pain in his back and legs and his left leg is

smaller than his right, which causes cramps and muscle seizures.  Tr. 428.  He also noted that he

has difficulty walking more than 75 to 100 feet without pain.  Tr. 428.

During the hearing, a vocational expert, Peter Manzi (the "VE"), testified regarding

Kwok's past work as a police officer and sergeant. Tr. 430-31.  The ALJ asked the VE to first

consider a hypothetical individual who could:

- lift 10 pounds occasionally and 5 pounds frequently;
- sit for 6 hours in an 8-hour day;
- stand and walk for a total of 2 hours in an 8-hour day;
- frequently reach with the left arm in all directions;
- no restrictions on handling and fingering;
- not climb ladders and scaffolds but occasionally climb stairs and ramps;
- frequently balance;
- occasionally stoop, kneel, crouch, and crawl; and
- must avoid dust, odors, and pulmonary irritants.

Tr. 431-432. The VE testified that this hypothetical individual would not be able to perform

Kwok's prior work. Tr. 432.  However, the VE testified that this same hypothetical individual

could perform other jobs in the national economy such as a table worker, addresser, and order

clerk.  *Id.*  The ALJ then asked the VE to consider the same hypothetical individual with the

additional limitations of sitting for only 4 hours in an 8-hour day, standing/walking for a total of

2 hours in an 8-hour day and/or being off task at least 15 percent of the workday and absent 2

times a month. Tr. 433.   The VE testified that this individual would not be able to perform the

jobs of table worker, addresser, and order clerk or any other jobs in the national economy.  Tr. 433.

Kwok's attorney then asked the VE to provide a definition for the job of addresser.  Tr. 434.  The VE testified that he had an "old definition" from 1977 that stated "addresses by hand or typewriter envelopes, card, advertising literature, packaging, consumer item for mailing.  May sort mail."  Tr. 434.  The VE then acknowledged that the job is not the same today because people use computers and not typewriters.  Tr. 434-35.  He stated the modern performance involved much less handwriting, more use of labels and computers, and updating computerized marketing lists.  Tr. 435-36.

Kwok's attorney then asked the VE what percentage of time he spends placing disabled individuals into the labor market and what percentage of time he spends testifying before the Social Security Administration.  Tr. 441-42. The VE estimated that he spent 30% of his time teaching courses online at Walden University, 40% of his time as a VE providing testimony for the Social Security Administration, and 30% of his time at his private practice consulting people with disabilities for work.  Tr. 442.  At that point, Kwok's attorney objected to the VE's testimony because the Social Security Administration's Hearings, Appeals and Litigation Manual ("HALLEX") requires a vocational expert to be actively placing disabled workers in the labor market, not just directing or coaching them and the VE did not meet that requirement. Tr. 442-43.  The VE disagreed with Kwok's attorney's characterization of his work as not involving active placement.  Tr. 443.  The ALJ took Kwok's objection into consideration but found that the VE was qualified to provide an opinion.  *Id.*

In a decision dated May 13, 2022, the ALJ, once again, found that Kwok was not disabled as defined in the Social Security Act.  Tr. 399-419.   In doing so, the ALJ first

determined that Kwok had last met the insured status requirements of the Social Security Act on December 31, 2020, and that he had not engaged in substantial gainful activity since the alleged onset date of March 1, 2015.  Tr. 404-5.   He then found that Kwok had a severe impairment that included lumbar degenerative disease with a history of surgical fusion.  Tr. 405.  Indeed, he held that Kwok's medically determinable impairments significantly limited his ability to perform basic work activities as required by SSR 85-28[2].  *Id*.  Nonetheless, the ALJ concluded that Kwok's impairments did not meet or medically equal the severity of a listed impairment.  *Id*.

Specifically, the ALJ noted that, among other things, there was no evidence that the nerve roots in Kwok's spine were compromised in a manner causing radicular symptoms of pain, paresthesia, or muscle fatigue along with signs of muscle weakness and irritation, tension, or compression.  *Id.*  He further stated there was no evidence that at least one of the signs and symptoms were present for at least 12 continuous months.  *Id.*  In addition, the ALJ held that Kwok failed to come forward with medical documentation showing the need for an assistive device requiring either the use of both hands or an inability to use one upper extremity for work-related activities, combined with the use of an assistive device in the other upper extremity.  *Id*.  In a similar vein, he also found no indication of spinal stenosis causing neurological compromise with symptoms of pain in one or both lower extremities, sensory loss in one or both lower extremities or neurogenic claudication.  *Id.*

The ALJ next assessed Zheng's residual functional capacity ("RFC") and held:

the claimant ha[s] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift, carry, push, or

---

[2] The ALJ also found that Kwok had several non-severe impairments, including diabetes mellitus, left shoulder tendinitis and derangement, and asthma.  But he noted that Kwok's diabetes mellitus was controlled with diet and asymptomatic during the period at issue.  He further found that Kwok, who is right-handed, also had left shoulder tendinitis and internal derangement, but the symptoms subsided, and they did not last for the full 12-month durational requirement to qualify as a severe impairment.  Finally, the ALJ found that Kwok had a diagnosis of asthma, but no indications of significant breathing problems or any asthma attacks during the period at issue.

> pull 10 pounds occasionally and less than 10 pounds frequently; he can sit for
> six hours in an eight-hour workday and stand and walk each for two hours in
> an eight-hour workday; the claimant can frequently reach overhead and in all
> other directions with the left upper extremity; he can frequently balance,
> occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, and never
> climb ladders, ropes, or scaffolds; and the claimant can never work in
> concentrated dust, odors, fumes, and other pulmonary irritants.

Tr. 406.  In making this RFC finding, the ALJ stated that he considered all of Kwok's symptoms

but found his statements concerning the intensity, persistence and limiting effects of these

symptoms "not entirely consistent" with the medical evidence and other evidence in the record.[3]

*Id*.  As a result, the ALJ held that Kwok was not disabled and denied his claim.  Tr. 20.

The Appeals Council declined review of the May 13, 2022 decision, so the Administrative Law

Judge's decision became final on July 13, 2022.  Tr. 400.  On July 21, 2022,  Kwok filed this

appeal.

## DISCUSSION

### 1.      Standards

### A.      Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c) should be

granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter

of law." *Rojas v. Berryhill,* 368 F. Supp. 3d 668, 669 (S.D.N.Y. 2019*)* (citing *Burns Int'l Sec.*

*Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995)).  "The standard for addressing a motion

for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in

---

[3] The ALJ referenced the fact that Kwok "helped care for a pet cat, maintained his own personal care, prepared simple meals, often ordered foot out, did laundry, drove a car, could go out alone, shopped in stores, over the phone, and by computer, had no problems handling money, watched television, played video games, and socialized with others in person and over the phone."  Tr. 407.  However, he seemingly dismissed other statements made by Kwok, including that that he used a cane for ambulation if he was going somewhere unfamiliar, had to remain on the first floor of his two story home when he was in pain, used a sock assist to help with dressing, wore shirts with buttons so he did not have to raise his arms overhead, did laundry monthly but rarely cleaned, received assistance shopping from others when he had heavy items.  Tr. 41- 51.

evaluating a motion to dismiss under Rule 12(b)(6)." *Id.*  The Court may "enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision

of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42

U.S.C. § 405(g**)**

      **B.**      **Review of ALJ's Decision**

      In reviewing a decision of the Commissioner of Social Security, a district court may set

aside a determination "only if it is based upon legal error or if the factual findings are not

supported by substantial evidence in the record as a whole."  *Greek v. Colvin,* 802 F.3d 370, 374-

75 (2d Cir. 2015) (citations omitted); *see* 42 U.S.C. § 405(g).  In other words, the findings of the

Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. §

405(g), and thus, the reviewing court does not decide the case de novo.  *Halloran v. Barnhart*,

362 F.3d 28, 31 (2d Cir. 2004); *see Clark v. Comm'r of Soc. Sec*., 143 F.3d 115, 118 (2d Cir.

1998) ("[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the

record"); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (holding that if the court finds that

there is substantial evidence to support the Commissioner's determination, the decision must be

upheld, "even if [the court] might justifiably have reached a different result upon a de novo

review").  However, "[s]ubstantial evidence [means] more than a mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389,

401) (internal quotation marks omitted)).

      **C.**      **The Disability Determination**

      To be eligible for disability benefits under the Act, a claimant must establish that he, she

or they is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see Burgess v. Astrue*, 537 F.3d 117, 119 (2d Cir. 2008). The Act further states that this impairment must be "of such severity that [the claimant] is not only unable to do [his, her, their] previous work but cannot, considering [his, her, their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000); *Nascimento v. Colvin*, 90 F. Supp. 3d 47, 51 (E.D.N.Y. 2015); *Marinello v. Comm'r of Soc. Sec.*, 98 F. Supp. 3d 588, 592-93 (E.D.N.Y. 2015).

In order to determine whether a claimant is disabled within the meaning of the Act, the Social Security Administration has promulgated regulations prescribing a five-step sequential analysis for evaluating disability claims. See 20 C.F.R. §§ 404.1520; 416.920. The Second Circuit has summarized this procedure as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant can perform.

*Telavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012). The claimant bears the burden of proof at steps one through four of the sequential inquiry, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Id.; Nascimento*, 90 F. Supp. 3d at 51.

13

In making these determinations, the Commissioner "must consider four factors '(1) the objective medical facts; (2) diagnosis or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; (4) the claimant's educational background, age, and work experience.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)(per curiam)).

### 2.    Analysis

Kwok contends that the ALJ's decision was not supported by substantial evidence.  The undersigned agrees.  To begin with, in reaching his conclusion, the ALJ found the opinion of the consultative examiner, Dr. Wolf, to be persuasive to the extent she opined that Kwok had up to marked limitations in walking, standing, and climbing, moderate limitations in lifting, and no limitation for sitting.  Tr. 410.  In fact, the ALJ indicated that Dr. Wolf's opinion was persuasive because it was consistent with the medical evidence, which showed that Kwok suffered from lumbar tenderness and spasms, decreased sensation in his feet, limited lumbar range of motion, positive straight leg raise testing bilaterally, difficulties walking on his toes and heels, and limited ability to squat.  Yet, in concluding that Kwok could perform sedentary work requiring him to sit for six hours in an eight-hour workday, the ALJ failed to mention Dr. Wolf's finding that, in order to sit for that long, Kwok would need to take breaks to stretch.  While the frequency of those breaks was not specified by Dr. Wolf, the VE did indicate that the jobs of table worker, addresser, order clerk, or any other jobs in the national economy, would not be available if Kwok were off task 15 percent of the day. Tr. 433.

More importantly, although the ALJ's decision references Dr. Goldstein's 2017 and 2020 examinations of Kwok, the ALJ failed to explain why he discounted Dr. Goldstein's opinion that Kwok was permanently and totally disabled.  Indeed, the decision is completely silent as to Dr.

Goldstein's June 2020 report.  While "'[a]n ALJ is free . . . to choose between properly submitted medical opinions,' and even to 'discount the opinion of a treating physician if it is inconsistent with other substantial evidence,'" an ALJ must, nonetheless, consider all the medical opinions in the record and "explain how the two 'most important' factors – supportability and consistency  – appl[y] to each opinion." *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023) (citing 20 C.F.R. § 404.1520c(b)(2) (internal citations omitted); *see also Balotti v. Comm'r of Soc. Sec*., 605 F. Supp. 3d 610, 616 (S.D.N.Y. 2022).  The ALJ did not do so in this matter.

Moreover, under the new regulations for claims filed on or after March 27, 2017, an ALJ is no longer required to discuss the other factors previously required to assess medical opinion evidence (*e*.g., relationship with the claimant).  *Id*.  However, "if there are 'two or more medical opinions . . . about the same issue [that] are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is still required to consider those factors, including whether the medical source has received advanced education and training to become a specialist.  *Id.* (citing 20 C.F.R. § 404.1520c(b)(3)).  Dr. Wolf's and Dr. Goldstein's opinions are equally well-supported but the ALJ did not consider the fact that Dr. Wolf is an internal medicine physician and Dr. Goldstein is an orthopedist.[4]

In sum, while it was certainly appropriate for the ALJ to question the lack of medical evidence between Kwok's surgeries and his alleged disability onset date and the infrequency of Kwok's visits to any medical provider in assessing Kwok's subjective complaints, the ALJ's failure to consider Dr. Goldstein's opinion and to explain supportability and consistency as it

---

[4] It warrants mention that the ALJ Moreover, with little to no discussion, the ALJ also discounted the findings of two other State agency consultants who had apparently found that Kwok had the severe impairment of disorders of the skeletal spine, but then concluded that there was insufficient evidence to evaluate the claim. While the ALJ legitimately questioned the lack of medical evidence between the surgeries and the alleged onset date, …

applied to that opinion, as well as his failure to consider other factors like specialties are grounds for a remand.  *See Balotti.,* 605 F. Supp. 3d at 617; *see also Vellone v. Saul,* No. 20 CV 261 RA KHP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), report and recommendation adopted *sub nom. Vellone on behalf of Vellone v. Saul*, No. 20 CV 261 (RA), 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("in cases where the new regulations apply, an ALJ *must* explain his/her approach with respect to the first two factors when considering a medical opinion") (emphasis in original).

Finally, it warrants mention that the courts in this and other Circuits have repeatedly express dissatisfaction about the Commissioner's reliance on vocational expert testimony predicated on plainly obsolete positions.  *See Zacharopoulos v. Saul*, No. 19-5075 (GRB), 2021 WL 235630 (E.D.N.Y. Jan. 25, 2021); *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010); *Skinner v. Berryhill*, No. CV 17-3795-PLA, 2018 WL 1631275, at *6 (C.D. Cal. Apr. 2, 2018).  The VE admitted in this case he was using an "old definition" for the job of addresser and that the job was not the same today because people use computers and not typewriters.  Tr. 434-35.

For all these reasons, the Court remands this matter to the Commissioner for further proceedings.  The Clerk of Court is directed to close the case.


Dated: Central Islip, New York          **SO ORDERED:**
      March 29, 2024

                                      _____/s/_____
                                      ARLENE R. LINDSAY
                                      United States Magistrate Judge